USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/5/2021

**STRADLEY RONON**

**Stradley Ronon Stevens & Young, LLP**

100 Park Avenue
Suite 2000
New York, NY 10017

Telephone  212.812.4124
Fax  646.682.7180

www.stradley.com

**MEMO ENDORSED**

August 5, 2021

<u>Via ECF</u>
Hon. Valerie E. Caproni, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *1042 11 Realty, Inc. v. Ocwen Loan Servicing, LLC*
       Case No. 1:21-cv-02761 (VEC)

Dear Judge Caproni:

Pursuant to Your Honor's July 8, 2021 Order, Defendant PHH Mortgage Corporation s/h/a Ocwen Loan Servicing, LLC ("Defendant") respectfully submits this letter to state the basis for Defendant's Motion for Adverse Inference related to the Deposition of Plaintiff's Rule 30(b)(6) witness. As you may recall, Plaintiff's corporate witness (Sanford Solny) appeared at a deposition on July 8, 2021 and refused to respond to many of Defendant's deposition questions, instead invoking his Fifth Amendment right against self-incrimination. As a result, Defendant seeks an adverse inference order from the Court for all questions to which Mr. Solny refused answer.

1. **Nature of the Action**

Plaintiff commenced this matter pursuant to Article 15 of the New York Real Property and Proceedings Law ("RPAPL") seeking to cancel and discharge Defendant's mortgage based upon the alleged expiration of the statute of limitations to foreclose the mortgage. Plaintiff contends that Defendant accelerated the mortgage debt on May 8, 2009 when it commenced a foreclosure action (the "Foreclosure Action"). However, Defendant properly de-accelerated the mortgage debt by virtue of the discontinuance of the Foreclosure Action. Accordingly, the debt is within the statute of limitations for collection.

2. **Factual Background and Procedural History**

On May 8, 2009, Defendant's predecessor commenced the Foreclosure Action as a result of Candido Rodriguez's ("Rodriguez") default on his mortgage loan. On July 16, 2014, Plaintiff 1042 II Realty, Inc. was formed (*see* Exhibit A) and two days later Plaintiff issued checks to allegedly purchase the Property from Rodriguez. (*See* Exhibit B). Then, on October 21, 2015 – fifteen months after the checks were cashed – Rodriguez deeded the Property to Plaintiff, even though the Foreclosure Action was still pending and Rodriguez was in default in that action. (*See* Exhibit C). On December 22, 2015, Defendant's predecessor filed a motion to discontinue the Foreclosure Action, which the court granted by Order dated June 6, 2016. (*See* Exhibit D).

3. **Deposition**

In order to develop its defenses, Defendant sought to take the deposition of a Rule 30(b)(6) witness for the Plaintiff on July 8, 2021. Mr. Solny appeared on behalf of the Plaintiff as a member of the corporation. (*See* Exhibit E.). During the course of the deposition, Defendant posed numerous questions to Mr. Solny regarding the formation of the corporation and the acquisition of the Property, the answers to which are highly relevant to the issues in this matter. Mr. Solny nonetheless invoked the Fifth Amendment in response to many of these questions, ostensibly because of an impending criminal indictment. However, the circumstances of Plaintiff's purchase and retention of the Property directly pertain to

the question of whether Plaintiff materially changed its position in detrimental reliance on the loan acceleration. In fact, the issue of detrimental reliance is a critical factor in determining whether the foreclosing plaintiff was estopped from revoking its acceleration. *Freedom Mortg. Corp. v. Engel*, 2021 WL 623869, at *10, 2021 N.Y. Slip Op. 01090 (N.Y., Feb. 18, 2021).

Some of the key questions which Mr. Solny refused to answer included the following:

- Questions related to Plaintiff's learning of and acquisition of the Property, such as "How did 1042 Realty come to learn about this property?" (*See* Exhibit E, p. 20, Lines 18-19; *see also Id.*, pp. 23-24, Lines 24-2; *see also Id.* p. 26, Lines 5-7 ). These questions go to the heart of how and why Plaintiff purchased the Property, which would undercut any argument made by Plaintiff that they detrimentally relied upon the Mortgage debt being time-barred at the time of purchase.

- Questions related to the purchase price and the closing, such as was "the total purchase price $18,000" (*see Id.*, p. 32, Lines 6-7; *see also* p. 50, Lines 6-7). Similarly, Defendant inquired as to the payor of the purchase price (*see Id.* 32-33, Lines 22-2) and the recipients of the checks (*see Id.* p. 33, Lines 13-14). Defendant also inquired as to the reason why the checks were dated and cashed fifteen months prior to the deed transfer (*Id.* p. 24, Lines 5-8), and who in fact was present at the closing (*Id.* p. 41, Lines 2-3). These questions relate to Plaintiff's out-of-pocket costs in acquiring the Property, and when exactly the Property was purchased, and what was the status of the foreclosure and Mortgage at that time.

- Questions related to the source of funds for the purchase such as "Where did 1042 Realty obtain the funds to purchase this property?" (*See Id.* p. 39, Lines 15-16; *see also* p. 39, Lines 20-21, pp. 39-40, Lines 25-3; and p. 40, Lines 7-9). These questions are relevant to the issue of Plaintiff's "detriment" and whether Plaintiff incurred any costs in acquiring the Property.

- Questions related to Plaintiff's knowledge at the time of closing, such as whether Plaintiff was aware of the active Mortgage, the pending foreclosure, Rodriguez' default under the Mortgage and Rodriguez' default in the foreclosure action. (*See id.* p. 24, Lines 12-14; p. 42-43, Lines 24-3; p. 43, Lines 7-9; p. 47, Lines 18-21; p. 47-48, Lines 25-5). These questions go to the issue of what information Plaintiff had available at the time of purchase which would discredit any claim that Plaintiff believed that the Mortgage debt was time-barred.

- Questions related to Plaintiff's intentions with the Property such as whether they intended to pay off Defendant's Mortgage (*see Id.* p. 49, Lines 12-14, 18-20) or pay the taxes or insurance on the Property (*id.* p. 52, Lines 18-19, 22-25). These also go to the issue of Plaintiff's detriment after purchasing the Property.

The issue of detrimental reliance is crucial to explore at deposition because Plaintiff raised this as a legal argument in support of its cross motion for summary judgment. (*See* Dkt. No. 17, pgs. 10-11). Indeed, Plaintiff responded to Defendant's argument that the Mortgage debt was de-accelerated by stating that the discontinuance of the Foreclosure Action occurred more than six years after the date of commencement and, therefore, was ineffective to de-accelerate the Mortgage debt. However, it is Defendant's position that Plaintiff did not materially change its position in detrimental reliance on the loan acceleration.[1] The questions at the Deposition that Mr. Solny refused to answer by invoking the Fifth Amendment go precisely to the heart of this issue and should have been answered.

4. **Basis for Adverse Inference**

---

[1] The Mortgage was accelerated more than six years before Plaintiff even purchased the Property, and Plaintiff was not the borrower on the Mortgage, nor a party to the Foreclosure Action. Instead, Plaintiff purchased the Property while the Foreclosure Action was still pending, a valid *lis pendens* was recorded against the Property and the Mortgage debt was not time-barred. Thus, Plaintiff purchased the Property subject to the Mortgage, yet never made any payments towards the Mortgage. *See* **Exhibit F.** Likewise, Plaintiff never made any payments towards the property taxes or property insurance, which were instead made by Defendant. *See* Exhibit F, Resp. No. 15. Therefore, Plaintiff cannot claim any detrimental reliance as a result of the acceleration of the debt.

Shortly after the enactment of Federal Rule of Evidence 501, the Supreme Court made clear that while the Fifth Amendment precludes drawing adverse inferences against defendants in criminal cases, it "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). The Second Department further held that when a former member of a company refuses to testify it can appropriately be conceptualized "as vicarious admissions of their former employer." *Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir.1983). This is precisely the situation here.

### 5. Argument

Defendant seeks an Order for an adverse inference against Plaintiff on the issues for which Mr. Solny invoked the Fifth Amendment. Mr. Solny refused to testify to the following issues:

(1) Plaintiff's purchase of the Property, including the purchase price, the source of the funds to purchase, the recipients of funds at the closing, and who was present at the closing;

(2) Plaintiff's conversations with the prior owner of the Property prior to the purchase of the Property;

(3) How Plaintiff learned of the Property and how it solicited the purchase of the Property;

(4) The reason why the deed to the Property was dated fifteen months after the checks were issued to and cashed by Rodriguez;

(5) Whether a title report was pulled in connection with the purchase of the Property;

(6) Plaintiff's knowledge of the pending foreclosure, the *lis pendens*, or the Mortgage recorded on the Property prior to purchase;

(7) Whether Plaintiff intended on paying off the Mortgage at the time of purchase, or sometime thereafter; and

(8) Whether Plaintiff intended on paying the property taxes or property insurance on the Property.

Based on Mr. Solny's refusal to testify on these critical issues related to the acquisition and ownership of the Property, Defendant should be entitled to an Order directing the Court to apply an adverse inference. Specifically, Defendant must be entitled to a ruling that: (1) Plaintiff was formed for the sole purpose of purchasing the Property; (2) Plaintiff communicated with Rodriguez in 2014 to purchase the Property; (3) Plaintiff purchased the Property in July of 2014 for $18,000 with knowledge of the Mortgage recorded against the Property and knowledge of the pending foreclosure action; (4) a Mr. Daniel Fernandez received $1,000.00 of the proceeds at the time of the purchase; (5) Daniel Fernandez had no ownership interest in the Property; (6) Plaintiff had no intention of paying off the Mortgage on the Property even though Plaintiff took subject to the Mortgage; (7) Plaintiff was aware that the prior owner was in default in the Foreclosure Action at the time of purchase; and (8) Plaintiff had no intention of ever paying the Property taxes or Property insurance after purchasing the Property.

### 6. Conclusion

Based on the foregoing, Defendant respectfully requests an Order from the Court directing applying an adverse inference as it relates to the facts and issues about which Plaintiff refused to testify.

Respectfully submitted,

By: /s/ Jacqueline M. Aiello
Jacqueline M. Aiello, Esq.
*Attorneys for Defendant*

---

To the extent that Defendant would like to file a more detailed motion, any revised motion, not to exceed 10 pages, must be filed by no later than **Friday, August 13, 2021**. Plaintiff's response in opposition, not to exceed 10 pages, is due no later than **Friday, August 27, 2021**. Defendant's reply in support of its motion, not to exceed 5 pages, is due no later than **Friday, September 3, 2021**.

SO ORDERED.

*[Signature: Valerie Caproni]*

Date: August 5, 2021

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

3