**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 1042 II REALTY, INC., | |
| Plaintiff, | |
| v. | Civil Case No.: 1:21-cv-02761-VEC |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR AN ADVERSE INFERENCE ORDER**

Defendant, PHH Mortgage Corporation ("Defendant"), incorrectly named in this action as Ocwen Loan Servicing, LLC, submits this Memorandum of Law in support of its Motion for an Adverse Inference Order related to the deposition of Plaintiff's Rule 30(b)(6) witness.

## I.   <u>INTRODUCTION</u>

In this matter, Plaintiff seeks to cancel and discharge Defendant's mortgage based upon the alleged expiration of the statute of limitations to foreclose the mortgage.  Plaintiff contends that the statute of limitations has run because Defendant accelerated the mortgage debt on May 8, 2009 when it commenced a foreclosure action (the "Foreclosure Action").  Plaintiff further contends that Defendant did not timely revoke acceleration having discontinued the Foreclosure Action more than six years after commencement.  In order to support this argument, Plaintiff must establish that it detrimentally relied upon this acceleration of the mortgage debt. (*See* Dkt. No. 17, pgs. 10-11). On July 8, 2021, counsel for Defendant deposed Plaintiff's Rule 30(b)(6) corporate designee, Sanford Solny, on the issue of detrimental reliance and on many other issues which are fundamental to the resolution of this matter.  Instead of simply answering questions that go to these issues, Mr. Solny repeatedly invoked his Fifth Amendment right against self-incrimination, because of a pending criminal indictment against him personally.

The reason for this strategy is clear – Mr. Solny is attempting to hide the plain truth that Plaintiff did not detrimentally rely upon Defendant's acceleration of the debt when it purchased the Property. It is even more clear that the anticipated responses to these questions would destroy Plaintiff's case completely.  Mr. Solny's answers would reveal that the mortgage debt was not time-barred at the time of purchase and there was a valid foreclosure action pending.  Mr. Solny's answers would also reveal that he purchased the Property for a fraction of the appraised value and never made any payments to the taxes or insurance.  These responses would establish that Plaintiff

did not believe the mortgage debt was time-barred at the time of purchase, and did not rely upon the prior acceleration in deciding to purchase the Property. Based on the charges alleged in Mr. Solny's pending indictment, he made it a habit to purchase properties in foreclosure, in hopes that he could void mortgages by way of some legal loophole.  That is exactly what Plaintiff did here – purchased this Property in hopes of voiding the Mortgage based on the prior acceleration of the debt.  As a result of Mr. Solny's refusal to respond to Defendant's questions, Defendant seeks an adverse inference order from the Court for all questions to which Mr. Solny refused answer.

II.     **FACTUAL AND PROCEDURAL HISTORY**

On April 17, 2008, Candido Rodriguez (hereinafter, "Rodriguez") executed, a note and mortgage to Accredited Home Lenders, Inc. in the original amount of $526,500.00 (hereinafter, the "Mortgage").  See Complaint at ¶ 7.  This Mortgage was recorded against a property located at 1042 College Avenue, Bronx, NY 10456 (hereinafter, the "Property")**.**  Upon Rodriguez's default on the loan secured by the Mortgage, IndyMac Federal Bank FSB ("IndyMac") commenced a foreclosure action, captioned *IndyMac Federal Bank FSB v. Candido Rodriguez, et al.*, Bronx County Index 380934/2009 (hereinafter, the "Foreclosure Action").  *See* Complaint at ¶ 8.  Rodriguez never appeared in the action.  On July 16, 2014, Plaintiff 1042 II Realty, Inc. was formed (*see* **Exhibit A**) and two days later Plaintiff issued checks to allegedly purchase the Property from Rodriguez. (*See* **Exhibit B**). Then, on October 21, 2015 – fifteen months after the checks were cashed – Rodriguez deeded the Property to Plaintiff, even though the Foreclosure Action was still pending and Rodriguez was in default in that action. (*See* **Exhibit C**). On December 22, 2015, Defendant's predecessor filed a motion to discontinue the Foreclosure Action, which the court granted by Order dated June 6, 2016. (*See* **Exhibit D**).

Plaintiff commenced this action in the Supreme Court of the State of New York, County

2

of the Bronx by filing a Summons and Complaint on January 13, 2021.  This action was timely removed to the instant Court based on diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).  *See* Docket No. 1.  Plaintiff's sole cause of action within the Complaint seeks to cancel and discharge the Mortgage on the misguided basis that Defendant's ability to foreclose on the Mortgage is time-barred.  In order to develop its defenses, Defendant sought to take the deposition of a Rule 30(b)(6) witness for the Plaintiff on July 8, 2021.  Mr. Solny appeared on behalf of the Plaintiff as a member of the corporation. (*See* **Exhibit E.).**

For the reasons set forth below, Defendant is entitled to an Adverse Inference Order for each of the subjects on which Plaintiff refused to testify.

**III.    DEPOSITION OF PLAINTIFF'S RULE 30(B)(6) WITNESS**

During Mr. Solny's deposition on July 8, 2021, Defendant posed numerous questions regarding how and why the Plaintiff corporation was formed, how Plaintiff acquired the Property, and whether Plaintiff relied on the acceleration of the loan to its detriment.  Mr. Solny invoked the Fifth Amendment in response to many of these questions due to an impending criminal indictment, and to hide the fact that Plaintiff did not detrimentally rely upon the acceleration.  This is not the intended purpose of the Fifth Amendment.

It is important to note that Mr. Solny does not dispute having personal knowledge regarding the answers to the questions he refused to answer – rather, he invoked his Fifth Amendment privilege to hide the true responses.  The questions at issue fall into five general categories.  <u>First</u>, Mr. Solny refused to answer questions relating to how Plaintiff learned of and acquired the Property, the answers to which may undercut any argument made by Plaintiff that it detrimentally

relied upon the Mortgage debt being time-barred at the time of purchase.    Some of the specific questions that Mr. Solny refused to answer include:

- "How did 1042 Realty come to learn about this property?" (*See* Exhibit E, p. 20, Lines 18-19);

- "Do you recall if Mr. Rodriguez approached you or any member of 1042 Realty about    this property?" (*Id*., p. 23-24, Lines 24-2); and

- "had you ever spoken with Candiou Rodriguez at any point from 2014 on?" (*Id*. p. 26, Lines 5-7).

    <u>Second</u>, Mr. Solny refused to answer questions related to the purchase price and the closing, such as:

- "the total purchase price $18,000?" (*see Id*., p. 32, Lines 6-7; see also p. 50, Lines 6-7).

- the payor of the purchase price (*see Id*. 32-33, Lines 22-2) and

- the recipients of the checks, including a non-party Daniel Fernandez (*see Id*. p. 33, Lines 13-14).

- the reason why the checks were dated and cashed fifteen months prior to the deed transfer (*Id*. p. 24, Lines 5-8), and

- who in fact was present at the closing (*Id*. p. 41, Lines 2-3).

These questions all relate to Plaintiff's out-of-pocket costs in acquiring the Property, when exactly the Property was purchased, and what was the status of the foreclosure and Mortgage at the time

4

5152890v.1

of purchase.  The answers to these questions are significant to Plaintiff's detriment in purchasing the Property and what expenses were incurred.

Third, Mr. Solny refused to testify to questions related to the source of funds for the purchase such as:

- "Where did 1042 Realty obtain the funds to purchase this property?" (*See Id*. p. 39, Lines 15-16);

- "Did it obtain a mortgage to purchase this property? (*Id.* p. 39, 20-21);

- "Did 1042 Realty have the cash in its own bank account to purchase this property?" (*Id.* p. 39-40, 25-3); and

- "Did 1042 Realty give the money to A to Z Management to pay for this property?" (*Id*. p. 40, 7-9).

These questions are relevant to the issue of Plaintiff's "detriment" and whether Plaintiff incurred any costs in acquiring the Property.  Based on the checks produced in discovery, Plaintiff was not even the party who paid for the Property, and the purchase price of $18,000 was a small fraction of the Property's true worth.

Fourth, Mr. Solny refused to answer questions related to Plaintiff's knowledge at the time of closing, such as:

- whether Plaintiff was aware of the active Mortgage, the pending foreclosure, Rodriguez' default under the Mortgage and Rodriguez' default in the foreclosure action. (*See id*. p. 24,

5152890v.1

Lines 12-14; p. 42-43, Lines 24-3; p. 43, Lines 7-9; p. 47, Lines 18-21; p. 47-48, Lines 25-5).

These questions go to the issue of what information Plaintiff had available at the time of purchase which would discredit any claim that Plaintiff believed that the Mortgage debt was time-barred.

<u>Fifth</u>, Mr. Solny refused to testify to questions related to Plaintiff's intentions with the Property such as:

- whether they intended to pay off Defendant's Mortgage (*see Id.* p. 49, Lines 12-14, 18-20)
- whether they intended to pay the taxes or insurance on the Property (*id*. p. 52, Lines 18-19, 22-25).

These questions also go to the issue of Plaintiff's detriment after purchasing the Property.

## IV.   <u>ARGUMENT</u>

Plaintiff is entitled to an Adverse Inference Order on the questions specified above as they are both highly germane to the resolution of this case and necessary to resolve the issue of detrimental reliance.

It is well-settled that while the Fifth Amendment precludes drawing adverse inferences against defendants in criminal cases, it "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). "In a civil proceeding, a fact finder is entitled to draw adverse inferences from a defendant's invocation of the privilege against self-incrimination." *ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002).  The Second Department concurred, holding that when a former member of a company refuses to testify it can appropriately be conceptualized "as vicarious admissions of their former employer." *Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983).  In *Brinks* the former Brink's employees declined to answer

6

questions relevant to the outcome of the case. The court pointed out to the jury that a "witness ha[s] a constitutional right to decline to answer on the ground that it may tend to incriminate him. However, you may, but need not, infer by such refusal that the answers would have been adverse to the witness' interest." *Brinks*, at 707.  The court also pointed out its consistent recognition that "in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause." *Id*. at 709, citing *Baxter,* at 319.

In a very similar case, *RAD Servs. Inc. v. Aetna Cas. & Sur. Co*., the Circuit Court affirmed a decision in favor of Aetna which was based largely in part on an adverse inference order.  *See* 808 F.2d 271, 275-278 (3d Cir.1986).    In support of its case, Aetna offered the deposition transcripts of witnesses from RAD who invoked their Fifth Amendment privileges and refused to answer questions concerning their involvement with RAD.  *Id.* at 275.  The district court instructed the jury that it could infer that the witnesses would have testified adversely to RAD and based on this the jury found for Aetna.  *Id.* at 272.  Based on this adverse inference, the jury found in favor of Aetna and the Circuit Court affirmed.  *Id.*

The subject of the inferences must be relevant and have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Fed.R.Evid. 401, 402.  As stated above, the issue of detrimental reliance is a critical factor in determining whether the foreclosing party (here, Defendant) was estopped from revoking its acceleration of the mortgage, more than six years after acceleration. *Freedom Mortg. Corp. v. Engel*, 2021 WL 623869, at *10, 2021 N.Y. Slip Op. 01090

(N.Y., Feb. 18, 2021).  Defendant would only be estopped if Plaintiff could establish that it relied upon this prior acceleration to its detriment.

Here, the questions that Mr. Solny refused to answer go to the heart of Plaintiff's claim that Defendant could not revoke the acceleration of the Mortgage debt because Plaintiff detrimentally relied upon the acceleration.   *See* Dkt. No. 17, pgs. 10-11.  This alleged detrimental reliance – if established – would allow Plaintiff to win its case by cutting off Defendant's ability to de-accelerate the loan, more than six years after the original acceleration.  *See Engel*, 2021 WL 623869, at *10.  On the other hand, if Mr. Solny's testimony establishes that Plaintiff did not materially change its position in detrimental reliance on the loan acceleration, then Defendant's voluntary discontinuance of the Foreclosure Action operated to revoke the prior acceleration; thus rendering the Mortgage debt timely.  The latter seems to be very true, as all discovery up to this point suggests that Plaintiff did not detrimentally rely on the acceleration.

It appears that Mr. Solny's invocation of the Fifth Amendment was nothing more than a technique employed to avoid responding to these highly relevant questions – because the responses would establish Plaintiff did not detrimentally rely upon the acceleration.  The answers which Mr. Solny would not provide, would clearly establish that the Mortgage debt was not time-barred at the time Plaintiff purchased the Property.  Because the debt was not time-barred at the time of purchase, Plaintiff cannot claim that it materially changed its position in reliance upon the acceleration to its detriment.  Said another way, Plaintiff did not purchase this particular Property believing that the Mortgage debt was time-barred, and potentially voidable.

First, Mr. Solny's responses would show that the Mortgage was accelerated less than five years before Plaintiff purchased the Property, and therefore Plaintiff cannot claim that it believed

the debt was time-barred at the time of purchase.  Second, Mr. Solny's responses would show that Plaintiff corporation was formed for the sole purpose of purchasing the Property, that Plaintiff paid a fraction of the appraised value for the Property, and that Plaintiff never made any payments to the taxes or Mortgage on the Property. Third, Mr. Solny's answers would show that Plaintiff purchased the Property while the Foreclosure Action was still pending, a valid *lis pendens* was recorded against the Property and Rodriguez was in default in that action. Fourth, Mr. Solny's answers would show that Plaintiff never suffered any detriment in that it made no payments to the Mortgage, the property taxes or property insurance.

Therefore, it appears clear that Plaintiff did not detrimentally rely on the acceleration of the debt.  The answers which Mr. Solny refused to provide would make clear that Plaintiff purchased the Property in hopes of invalidating the valid Mortgage based on some legal loop-hole. Plaintiff therefore cannot claim that it purchased the Property relying on the fact that the Mortgage debt was already time-barred due to the prior acceleration of the debt.

Based on Mr. Solny's refusal to testify on these critical issues related to the acquisition and ownership of the Property, Defendant should be entitled to an Order directing the Court to apply an adverse inference.  The responses to the questions should point to the fact that Plaintiff did not detrimentally rely upon Defendant's acceleration of the debt.  Specifically, Defendant must be entitled to a ruling that the trier of fact should be permitted to infer that Plaintiff would have testified to the following facts: (1) Plaintiff was formed for the sole purpose of purchasing the Property; (2) Plaintiff communicated with Rodriguez in 2014 to purchase the Property; (3) Plaintiff purchased the Property in July of 2014 for $18,000 with knowledge of the Mortgage recorded against the Property and knowledge of the pending foreclosure action; (4) a Mr. Daniel Fernandez received $1,000.00 of the proceeds at the time of the purchase; (5) Daniel Fernandez had no

5152890v.1

ownership interest in the Property; (6) Plaintiff had no intention of paying off the Mortgage on the Property even though Plaintiff took subject to the Mortgage; (7) Plaintiff was aware that the prior owner was in default in the Foreclosure Action at the time of purchase; and (8) Plaintiff had no intention of ever paying the Property taxes or Property insurance after purchasing the Property.

## V.   <u>CONCLUSION</u>

Based on the foregoing, Defendant respectfully requests an Order from the Court applying an adverse inference as it relates to the facts and issues about which Plaintiff refused to testify and grant such other and further relief as it deems appropriate.


Dated:   August 23, 2021          STRADLEY RONON STEVENS & YOUNG, LLP
         New York, NY             A Pennsylvania Limited Liability Company


                                  By:     /s/ *Jacqueline Aiello*
                                          Jacqueline M. Aiello
                                          (N.Y. Bar. No. JMM4790)
                                          100 Park Avenue, Suite 2000
                                          New York, New York 10017
                                          Telephone: (212) 812-4124
                                          Facsimile: (646) 682-7180
                                          jaiello@stradley.com

5152890v.1