USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/31/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------X
                                                              :
1042 II REALTY, INC.,                                         :
                                        Plaintiff,            :
                                                              :        21-CV-2761 (VEC)
                  -against-                                   :
                                                              :        OPINION & ORDER
                                                              :
PHH MORTGAGE CORPORATION,                                     :
                                                              :
                                        Defendant.            :
------------------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Plaintiff 1042 II Realty, Inc. brought a quiet title action against Defendant PHH

Mortgage Corporation[1] pursuant to § 1501(4) of the N.Y. Real Property and Proceedings Law,

seeking to extinguish a mortgage attached to a property in the Bronx. Defendant moved to

dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure, and Plaintiff cross-moved for summary judgment pursuant to Rule 56 of the

Federal Rules. For the following reasons, Defendant's motion is DENIED, and Plaintiff's cross-

motion is GRANTED.

## BACKGROUND

On April 17, 2008, Candido Rodriguez obtained a loan in the amount of $526,500

secured by a mortgage on property located at 1042 College Avenue, Bronx, New York. *See*

---

[1]     Plaintiff originally sued Ocwen Loan Servicing, LLC. *See* Compl., Dkt. 1-2 at 4. On June 1, 2019, Ocwen
Loan Serving, LLC merged with PHH Mortgage Corporation, and the surviving entity became known as PHH
Mortgage Corporation. *See* Not. of Removal, Dkt. 1 at 1 n.1. Neither party objected to correcting the name of the
Defendant entity in the case caption, *see* Hearing Tr., Dkt. 57 at 9–10; the Court directed the Clerk of Court to
correct the case caption, *see* Order, Dkt. 55 at 1.

        The Court has diversity jurisdiction over this action. *See* 28 U.S.C. § 1332. Plaintiff is a New York
corporation with its principal place of business in New York. Defendant is a Maryland corporation with its principal
place of business in New Jersey. *See* Joint Letter, Dkt. 22 at 1. The amount-in-controversy requirement is met
because the outstanding debt secured by the mortgage Plaintiff is seeking to discharge totals $524,617.86. *Id.*

Compl., Dkt. 1-2 ¶¶ 4, 6, 7; Def. Resp. 56.1 Stmt., Dkt. 21 ¶ 1.  Approximately one year later,

the loan was assigned to IndyMac Federal Bank FSB ("IndyMac").  Def. Resp. 56.1 Stmt. ¶ 4.

On May 8, 2009, IndyMac filed a foreclosure action in the Bronx County Supreme Court.  *Id.* ¶

5.  In that action, IndyMac alleged that Rodriguez had defaulted on the loan by failing to pay the

monthly installments as required.  *See* Bronx County Compl., Dkt. 17-3 ¶ 8.  IndyMac further

claimed that, in accordance with the terms of the note and the mortgage, it was electing to

declare the entire principal loan balance, in the amount of $524,617.86, "to be due and owing."

*Id.* ¶¶ 9–10.

Plaintiff purchased the property from Rodriguez several years later.[2]  On December 22,

2015, more than six years after IndyMac filed the foreclosure action, IndyMac's successor

moved to discontinue that action.  Def. Resp. 56.1 Stmt. ¶ 7; Mot. to Discontinue, Dkt. 6-3 at 1–

2.  The following month, on January 27, 2016, the deed for the property was recorded in

Plaintiff's name.  Compl. ¶ 4; Search Results, Dkt. 17-2 at 1.  On June 6, 2016, the motion to

discontinue that had been filed six months earlier was granted, and the foreclosure action was

closed.  Def. Resp. 56.1 Stmt. ¶ 11; Bronx County Supreme Court Order, Dkt. 6-4.  The loan was

subsequently assigned to Ocwen Loan Servicing, LLC, *see* Def. Resp. 56.1 Stmt. ¶ 13; Search

Results at 1, which later merged and became the Defendant, PHH Mortgage Corporation, *see*

Not. of Removal, Dkt. 1 at 1 n.1.

On January 13, 2021, Plaintiff sued Defendant in Bronx County Supreme Court to quiet

title on the property, seeking a judgment against Defendant extinguishing the mortgage pursuant

to § 1501(4) of the N.Y. Real Property and Proceedings Law.  *See* Compl., Dkt. 1-2.  Defendant

timely removed the action to federal court, *see* Not. of Removal, Dkt. 1, and moved to dismiss

---

[2]      The date of Plaintiff's purchase of the property is disputed.  Plaintiff alleges in its complaint that it
purchased the property on October 21, 2015.  *See* Compl. ¶ 4.  Defendant claims that in discovery it learned that
Plaintiff purchased the property in June 2014 for $18,000.  *See* Mem. of Law, Dkt. 50 at 9.  That dispute is
immaterial to resolution of the parties' motions.

for failure to state a claim, *see* Not. of Mot., Dkt. 5.  Plaintiff opposed the motion and cross-moved for summary judgment.  *See* Not. of Mot., Dkt. 16; Mem. of Law, Dkt. 17.  Defendant opposed Plaintiff's cross-motion.  Mem. of Law, Dkt. 20.

## LEGAL STANDARD

For Plaintiff to survive Defendant's motion to dismiss under Rule 12(b)(6), its "complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).  But even though courts are required to accept all of the factual allegations in the complaint as true, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

With respect to Plaintiff's cross-motion for summary judgment, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up)).  The Court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per

3

curiam) (cleaned up) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79–80

(2d Cir. 2009)).

## DISCUSSION

Plaintiff brings its action to quiet title pursuant to § 1501(4) of the N.Y. Real Property

and Proceedings Law.  That statute provides, in relevant part:

> Where the period allowed by the applicable statute of limitation for the
> commencement of an action to foreclose a mortgage . . . has expired, any person
> having an estate or interest in the real property subject to such encumbrance may
> maintain an action against any other person or persons . . . to secure the
> cancellation and discharge of record of such encumbrance, and to adjudge the
> estate or interest of the plaintiff in such real property to be free therefrom;
> provided, however, that no such action shall be maintainable in any case where
> the mortgagee . . . or the successor of [the mortgagee] shall be in possession of the
> affected real property at the time of the commencement of the action.

N.Y. RPAPL § 1501(4).  The parties agree that the only dispute in this lawsuit is whether the

applicable statute of limitations on foreclosure has expired.  *See* Mem. of Law, Dkt. 6 at 1; Mem.

of Law, Dkt. 17 at 1.  In New York, the statute of limitations for breach of a note secured by a

mortgage is six years.  N.Y. CPLR § 213(4).

## I.      The Statute of Limitations Trigger

For a mortgage loan payable in installments, "separate causes of action accrue[ ] for each

installment that is not paid, and the statute of limitations begins to run[ ] on the date each

installment becomes due."  *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982 (2d Dep't

2012).  "The law is well settled that, even if a mortgage is payable in installments, once a

mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to

run on the entire debt."  *Ditmid Holdings, LLC v. JPMorgan Chase Bank, N.A.*, 180 A.D.3d

1002, 1003 (2d Dep't 2020); *see also Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1, 21 (2021)

*reargument denied*, 37 N.Y.3d 926 (2021) ("[A] cause of action to recover the entire balance of

the debt accrues at the time the loan is accelerated, triggering the six-year statute of limitations to

commence a foreclosure action." (collecting cases)).  "Acceleration is therefore a significant

event for statute of limitations purposes . . . ."  *Engel*, 37 N.Y.3d at 22.

The New York Court of Appeals has "made clear that any election to accelerate must be

made in accordance with the terms of the note and mortgage and that the parties are free to

include provisions detailing what the noteholder must do to accelerate the debt."  *Id.* (citing

*Albertina Realty Co. v. Rosbro Realty Corp.*, 258 NY 472, 475–76 (1932)).  "[T]o be valid, an

election to accelerate must be made by an 'unequivocal overt act' that discloses the noteholder's

choice, such as the filing of a verified complaint seeking foreclosure and containing a sworn

statement that the noteholder is demanding repayment of the entire outstanding debt."  *Id.* (citing

*Albertina*, 258 NY at 476).

Plaintiff contends that the mortgage debt in this case was accelerated on May 8, 2009,

when IndyMac, the owner of the mortgage loan at the time, filed a foreclosure action against

Rodriguez, the owner of the property at the time.  Mem. of Law, Dkt. 17 at 1.  The Court agrees.

Defendant asserts, half-heartedly, that the mortgage debt was never accelerated.  Defendant first

argues that the loan was not accelerated because IndyMac failed to comply with the applicable

pre-acceleration requirements; specifically, Defendant asserts that IndyMac did not mail the

notice of default to Rodriguez.  Mem. of Law, Dkt. 6 at 7.[3]  In its response, Plaintiff provided a

copy of the notices sent by IndyMac to Rodriguez as well as copies of two declarations filed by

Defendant's predecessor in the foreclosure action in which the predecessor stated that notices of

---

[3]      Defendant further contends that the purported failure to mail the notice of default to Rodriguez was the reason Defendant's predecessor moved to discontinue the foreclosure action on December 22, 2015.  Mem. of Law, Dkt. 6 at 7; *see also* Def. Resp. 56.1 Stmt., Dkt. 21 ¶ 7; Mot. to Discontinue, Dkt. 6-3 at 1–2.  To support that contention, Defendant cites a declaration filed in the foreclosure action that stated that the motion to discontinue had been filed because "a condition precedent to the foreclosure action was not met."  Bondoc Decl., Dkt. 6-3 ¶ 6.  The declaration provided no additional detail regarding which condition precedent had not been met, and Defendant has failed entirely to disclose the basis for its assertion that the condition precedent at issue was the obligation to mail the notice of default to the borrower.

default had been mailed to Rodriguez.  *See* Mem. of Law, Dkt. 17 at 6–8 (referencing Notices, Dkt. 17-1; Yanez Decl., Dkt. 17-5 ¶¶ 6–7; Brennan Decl., Dkt. 17-6 ¶¶ 3–4).

Defendant does not address directly Plaintiff's argument.  Instead, Defendant metaphorically stomps its foot and asserts simply that it continues to "dispute[] that the Foreclosure Action accelerated the Mortgage debt . . . ."  Mem. of Law, Dkt. 20 at 1.  With little to go on, the Court concludes that Defendant has abandoned its argument that the mortgage debt was not accelerated because its predecessor did not provide the borrower with required notice. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to a motion for summary judgment] that relevant claims or defenses that are not defended have been abandoned."); *see also, e.g.*, *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004); *Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014); *Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, No. 16-CV-4254, 2019 WL 1300335, at *10 (S.D.N.Y. March 21, 2019); *Simon v. N.Y.C.*, No. 14-CV-8391, 2015 WL 4092389, at *2 (S.D.N.Y. July 6, 2015).

Defendant next argues that the loan was never accelerated because under the standard terms of the mortgage loan at issue in this case, once payment in full was required, the borrower had the option, until a judgment of foreclosure was entered, to bring his account current and stop the enforcement of the mortgage contract.  *See* Mem. of Law, Dkt. 6 at 9 (citing Mortgage Contract, Dkt. 6-2 ¶¶ 19, 22).  To support that contention, Defendant cites *Nationstar Mortg., LLC v. MacPherson*, 56 Misc. 3d 339, 351 (Sup. Ct. Suffolk Cnty. 2017), which considered the same provisions as are at issue in the mortgage contract in this case.[4]  In *Nationstar*, the Court found that, pursuant to those provisions, "it is a judgment that triggers the acceleration in full of

---

[4]      Several cases consider these exact provisions.  The provisions are ubiquitous because they appear in "a uniform instrument issued by Fannie Mae and Freddie Mac for use in New York."  *Bank of New York Mellon v. Dieudonne*, 171 A.D.3d 34, 35 (2019).

the entire mortgage debt," and not "the simple filing of a foreclosure action." *Id.* That holding was, however, abrogated by the Second Department in a case that considered the same mortgage contract provisions. *See Bank of New York Mellon v. Dieudonne*, 171 A.D.3d 34, 40 (2d Dep't 2019) ("[T]he extinguishment of the defendant's contractual right to de-accelerate the maturity of the debt pursuant to the reinstatement provision in paragraph 19 of the mortgage was not a condition precedent to the plaintiff's acceleration of the mortgage.").[5] The Second Department further found that "[t]o the extent that decisional law interpreting the same contractual language holds otherwise, it should not be followed." *Id.* (listing abrogated cases including *Nationstar Mortg., LLC v. MacPherson*).[6] Accordingly, the existence of provisions in the mortgage contract that gave the borrower the option to deaccelerate the mortgage debt by bringing his account current does not mean that the debt was never accelerated.[7]

In short, as a matter of law, the six-year statute of limitations was triggered on May 8, 2009, when IndyMac, which previously owned the mortgage, accelerated the mortgage debt and filed a foreclosure action against Rodriguez.

---

[5]      The Court is baffled that Defendant did not alert the Court to the fact that *MacPherson* is no longer good law. Defendant went so far as providing a copy of the decision, which includes a conspicuous red flag noting that the case has been subject to "severe negative treatment" and has been abrogated by the Second Department. *See* Decision, Dkt. 6-6 at 1.

[6]      Defendant also cites a Florida Supreme Court case that Defendant asserts reaches the same conclusion as the Suffolk County Supreme Court in *MacPherson*. *See* Mem. of Law, Dkt. 6 at 10–11 (citing *Bartram v. U.S. Bank Nat'l Ass'n*, 211 So.3d 1009 (Fla. 2016)). But because the Second Department has reached the opposite conclusion and because Florida law is not relevant in interpreting New York law, the Court declines to consider that decision. Defendant further cites *Centerbank v. D'Assaro*, another decision from the Suffolk County Supreme Court. *See Centerbank v. D'Assaro*, 158 Misc. 2d 92 (Sup. Ct. Suffolk Cnty. 1993). In *Centerbank*, the court noted in dicta that after electing to accelerate, "[s]hould a mortgagee accept a lesser amount [than the full principal from the mortgagor], such mortgagee is in danger of having waived its right to acceleration and to proceed with the foreclosure action." *Id.* at 94. Not only is dicta from the Suffolk County Supreme Court not very persuasive authority, that court was discussing the circumstances pursuant to which an acceleration is revoked (or "waived") and not what constitutes acceleration in the first place. Accordingly, the Court declines to consider that decision when assessing whether the loan was accelerated in this case.

[7]      Moreover, here too Defendant did not respond to Plaintiff's response to Defendant's argument that the loan was never accelerated. *See* Mem. of Law, Dkt. 17 at 8–10. For the same reasons discussed *supra*, Defendant's argument that other provisions in the mortgage contract belie acceleration has been abandoned.

## II.      The Effect of Revocation After the Statute of Limitations Has Expired

Because the statute of limitations for a collection action on the note was triggered on May 8, 2009, it expired on May 8, 2015, six years later.  N.Y. CPLR § 213(4).  Defendant contends that the statute of limitations has not expired, however.  It argues that when its predecessor's motion to discontinue the foreclosure action was granted on June 6, 2016, that revoked any acceleration that had occurred and reset the statute of limitations.  Mem. of Law, Dkt. 6 at 8–9.

Both parties agree that the voluntary discontinuance of a foreclosure action may deaccelerate a mortgage debt.  *See* Mem. of Law, Dkt. 6 at 8; Mem. of Law, Dkt. 17 at 10.  *See also Engel*, 37 N.Y.3d at 19 ("[W]e hold that where the maturity of the debt has been validly accelerated by commencement of a foreclosure action, the noteholder's voluntary withdrawal of that action revokes the election to accelerate, absent the noteholder's contemporaneous statement to the contrary.").  The parties disagree, however, about the legal effect of a revocation that occurs after the six-year statute of limitations has expired.[8]

The seminal decision *Freedom Mortg. Corp. v. Engel*, decided by the New York Court of Appeals on February 18, 2021, does not address directly that question.[9]  Decisions of the New York Appellate Divisions preceding *Engel* uniformly recite the rule of law as requiring the revocation of acceleration to occur within the six-year statute of limitations in order to stop the statute of limitation from running.  *See Engel*, 37 N.Y.3d at 28–29 (collecting Appellate Division cases); *see also Fed. Nat'l Mortg. Ass'n v. Rosenberg*, 180 A.D.3d 401, 402 (1st Dep't 2020) ("A

---

[8]       A lender may be equitably estopped from revoking an acceleration if the "borrower changed his position in reliance on [the] election [to accelerate the loan] by executing a new mortgage [or taking some other action]."  *See Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1, 28 (2021), *reargument denied*, 37 N.Y.3d 926 (2021) (citing *Kilpatrick v Germania Life Ins. Co.*, 183 N.Y. 163, 168 (1905)).  Because Plaintiff has stated on the record in both its written briefs and in open court that it is not arguing that it detrimentally relied on the loan acceleration, *see, e.g.*, Resp., Dkt. 51 at 6; Hearing Tr. at 5–7, equitable estoppel is not relevant to this case.

[9]       In *Engel*, the Court found that Freedom Mortgage's 2013 voluntary withdrawal of a 2008 foreclosure action and Ditech's 2014 voluntary withdrawal of a 2009 foreclosure action constituted valid revocations.  *Engel*, 37 N.Y.3d at 33, 34 n.12.  Both revocations occurred within the six-year statute of limitations.

lender may revoke its election to accelerate the mortgage, but it must do so by an affirmative act of revocation occurring *during the six-year statute of limitations period*." (emphasis added) (internal citation omitted)); *Bank of N.Y. Mellon v. Craig*, 169 A.D.3d 627, 629 (2d Dep't 2019) (same); *U.S. Bank Nat'l Ass'n for Residential Asset Sec. Corp. Home Equity Mortg. Asset-Backed Pass-Through Certificates Series 2006-KS2 v. Balderston*, 163 A.D.3d 1482, 1484 (4th Dep't 2018) (same); *NMNT Realty Corp. v. Knoxville 2012 Tr.*, 151 A.D.3d 1068, 1069–70 (2d Dep't 2017) (same); *Lavin v Elmakiss*, 302 A.D.2d 638, 639 (3d Dep't 2003) (same).

Even after *Engel* was decided, New York Appellate Divisions have continued to articulate the rule as requiring the revocation to occur within the six-year statute of limitations. *See, e.g.*, *Emigrant Bank v. McDonald*, 197 A.D.3d 453, 455 (2d Dep't 2021); *Wilmington Sav. Fund Soc'y, FSB v. Iqbal*, 195 A.D.3d 772, 773 (2d Dep't 2021); *see also 53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 79 (2d Cir. 2021) (reviewing relevant New York law).[10]

Defendant relies on a single case that went the other way: *21st Mortg. Corp. v. Rudman*, 193 A.D.3d 910, 910–11 (2d Dep't 2021). *See* Mem. of Law, Dkt. 20 at 2–3 (discussing *Rudman*). In *Rudman*, the Second Department relied on *Engel* and held that the voluntary discontinuance of a foreclosure action constituted a revocation as a matter of law, which meant that a subsequent lawsuit to collect the loan was not time-barred. *Id.* at 910–11. The court did not address, or even acknowledge, that the voluntary discontinuance occurred after the six-year statute of limitations had run. That decision is no longer good law; it was recently vacated on unrelated grounds by the Second Department following re-argument. *See 21st Mortg. Corp. v. Rudman*, No. 2017-10177, 2022 WL 40051 (2d Dep't Jan. 5, 2022). But even if the original

---

[10]     The three cited cases discuss the *Engel* decision. Although not addressed explicitly, the Court infers that those courts did not see any conflict between the holding of *Engel* and the long-standing rule that revocation of acceleration must occur within the six-year statute of limitations in order to stop the statute from running.

decision in *Rudman* had not been vacated, the Court would decline to follow it because it fails to address directly the statute of limitations issue.[11]

Both policy considerations and logic support the rule that revocation of acceleration of a mortgage debt is effective to stop the statute of limitations from running on the collection of the underlying debt only if the revocation occurs within the six-year statute of limitations.  In *Engel*, the New York Court of Appeals noted that it has "repeatedly recognized the important objectives of certainty and predictability served by our statutes of limitations and endorsed by our principles of contract law, particularly where the bargain struck between the parties involves real property." *Engel*, 37 N.Y.3d at 20 (collecting cases).  *See also id.* at 31, 32 (emphasizing the importance of certainty).[12]

Requiring revocations to occur within the six-year statute of limitations promotes certainty and predictability.  "[N]otes secured by residential mortgages are typically negotiable instruments, meant to be transferred and assigned."  *Id.* at 24 n.4.  To bring certainty and predictability to that market, it is important for all involved to know whether the debt secured by the mortgage can still be collected.  A mortgage loan is obviously worth considerably less if the mortgagee cannot collect the debt secured by the mortgage because the statute of limitations has expired due to earlier acceleration of the debt.  Conversely, a loan secured by a mortgage that is still enforceable because any prior acceleration had been revoked within the statute of limitations period is worth considerably more.  On the other side of the transaction, property that is

---

[11]     *See DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005) ("The Court is not strictly bound by state intermediate appellate courts, [although] rulings from such courts are . . . not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." (cleaned up)).

[12]     Additionally, in overturning the Second Department's line of cases requiring after-the-fact analysis to determine whether an acceleration had been revoked, the Court of Appeals found that the old approach "leads to inconsistent and unpredictable results and, critically, renders it impossible for parties to know whether, or when, a valid revocation has occurred, inviting costly and time-consuming litigation to determine timeliness."  *Engel*, 37 N.Y.3d at 32.

encumbered by an unenforceable mortgage (due to a loan acceleration that occurred more than six years prior and that was not revoked during that time period) is worth more than the same property that is encumbered by a mortgage that still can be enforced.  Maintaining certainty and predictability in matters involving real property, *id.* at 20, is beneficial for the parties and for the general public.[13]

Putting aside policy, as a matter of logic, revocation of acceleration after the statute has run cannot possibly be effective to revive a cause of action on the underlying debt.  New York has established a six-year statute of limitations for collecting a "note, the payment for which is secured by a mortgage on real property."  N.Y. CPLR § 213(4).  When the note is accelerated, that statute begins to run on the unpaid balance.  *Ditmid Holdings*, 180 A.D.3d at 1003.  Six years post-acceleration, the statute has expired.  Revoking the acceleration after the statute of limitations for collection of the debt has expired is the legal equivalent of closing the barn door after the horse has escaped.

In sum, under New York law, revocation of acceleration of a mortgage debt is only effective to stop the statute of limitations from running on the underlying debt if that revocation occurs prior to the expiration of the statute of limitations.  In this case, the revocation occurred after the expiration of the statute of limitations, making it ineffective.  Accordingly, because the statute of limitations to collect the debt secured by Defendant's mortgage has expired, Plaintiff has met the requirements for quiet title and to extinguish the mortgage pursuant to § 1501(4) of the N.Y. Real Property and Proceedings Law.

---

[13]    Defendant suggests that an individual associated with Plaintiff "made it a habit to purchase properties in foreclosure, in hopes that he could void mortgages by way of some legal loophole."  Mem. of Law, Dkt. 50 at 2.  The Court sympathizes with Defendant's position but finds that under New York law, the motives of parties to contracts are "generally irrelevant."  *Engel*, 37 N.Y.3d at 36.  Moreover, lenders like Defendant can protect their interests and thwart the alleged strategy of Plaintiff and others who seek to "void mortgages by way of some legal loophole" by keeping tabs on the foreclosure actions that they or their predecessors file.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED, and Plaintiff's cross-motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in Plaintiff's favor. The mortgage at issue in this matter that encumbers the property located at 1042 College Avenue, Bronx, New York, is cancelled and discharged.

The Clerk is further directed to terminate the open motions at docket entries 5 and 16 and to close this case.

**SO ORDERED.**

**Date:  January 31, 2022**
       **New York, NY**

                                      **VALERIE CAPRONI**
                                      **United States District Judge**